Good afternoon. My name is Drew Wallenstein and I represent the appellant in this matter. I'm Mr. Christopher Carson. Today I'm prepared and mostly going to focus my discussion on Issues 1 and 4. If I have time I'll discuss Issue 2. As a brief reminder, this is an appeal from the second stage dismissal of Mr. Carson's post-conviction petition. Mr. Carson is convicted of first degree murder stemmed from an incident or conflict with another man outside of his then girlfriend's home. Discussing the dismissal of the post-conviction petition, I think it's key to focus in on an error of the circuit court which was to consider a document outside of the record. The circuit court explicitly considered a transcript that was attached to the state's motion to dismiss. That transcript does not appear anywhere in the record of the proceedings of trial. It's not in the common law record. That document was wholly outside the record and therefore under the Post-Conviction Hearing Act, it was an error for the circuit court to consider that in making its decision. The circuit court made an explicit finding of fact based on that transcript of Mr. Carson's statement. It found that based on that transcript, his attorney was correct in telling him that he should not testify because he would have been impeached. That was a finding of fact that absent that transcript, the circuit court would not have made. At the second stage, it is improper for the circuit court to make those kinds of credibility or fact-finding determinations unless they come from the record at trial. The circuit court can consider the trial court record and say that the trial court record affirmatively disagrees or affirmatively challenges claims in post-conviction petition. That is an error under elementary law for the court to consider matters outside the record. As far as I'm aware, there is no case under elementary law which has held that it is appropriate for the circuit court to consider matters outside the record. And I want to draw the court's attention to two cases in particular, which is the Eleanor Supreme Court case in Sanders and the First District Court case in McKeel. Both of those cases are instructive in that they both hold very clearly that a circuit court making a finding of fact based on matters outside the record is an error. It is reversible error. So on that matter, we would ask this court to remand for a new second stage proceeding because the circuit court considered matters that it should not have when it made the dismissal order. This issue is also intimately related to the fourth issue in the case, which is that Christopher Carson didn't make a substantial showing of a constitutional violation. Mr. Carson's post-conviction petition alleges that his attorney in a first-degree murder case talked to him for about 20 minutes. In that discussion, the trial attorney failed to learn and discuss with Mr. Carson what he was planning to testify to. Mr. Carson wanted to tell him about a potential witness that had gotten into confrontation with the victim, some lion, and that he knew that some lion regularly carried a gun. Some lion had threatened him when he was dating his cousin with physical violence. Some lion had attacked him once. And he knew about other incidents that some lion had been involved in, other violent incidents. That lynch material would have been critical in this case when this case was only decided based primarily on the testimony of state's witnesses. There was no other evidence provided by defense counsel to establish either second-degree murder or self-defense. So in a second-degree murder self-defense case, trial counsel talks to his client for a total of 20 minutes, doesn't do any investigation of potential witnesses after that, doesn't actually know what his client is going to testify to, and then tells his client, you're going to be impeached, don't testify. What trial counsel believed the strategy was going into that is unclear because no evidence is produced by defense to support self-defense or second-degree murder. And this court, on appeal, the direct appeal of the case, found that mutual combat was ambiguous in the record. So therefore, as a matter of law, a second-degree murder couldn't be found. So trial counsel should have known that based on this record, or based on the potential evidence that was going to be presented at trial, if Carson did not testify, if no lynch material was provided, if no other evidence of mutual combat or mutual aggression was given, that as a matter of law, he was not going to succeed at second-degree murder. It's just trial counsel's strategy was unreasonable. And trial counsel's thinking was unreasonable that he gave advice to his client, do not testify, based on a 20-minute conversation and not doing any other investigation in the case. I think it's also important that the circuit court essentially made, as I discussed in Issue 1, the circuit court made a finding of fact that he would have been impeached, so the advice is correct. I would point out that a trial attorney in a first-degree murder case should talk to his client, learn information from the client, investigate the case based on that information from the client. Even, you know, just as a hypothetical, Mr. Carson could have told his attorney, everything that I told the police in my statement was a complete lie. It's all a lie, everything in that was incorrect. Even though that would mean that he would be impeached on that statement, as a trial attorney, I think it's important to know what your client believes to be the truth. When you're talking about second-degree murder self-defense, you're talking about an incident involving two men getting into a fight and one of them ending up dead. The failure to learn the basic information about the case was unreasonable, and his advice was not based on honest assessment of the case. It couldn't have been, because he didn't actually know what he was going to testify to. Further, the lynch material in question, Mr. That material could easily have tipped the scales in this case. Whereas I said, the issues of things like mutual combat, who was the aggressor, who was not, was very muddled. Ashley Edwards said that Sam Lyon was the one who actually made the first aggressive move. Another witness said they were fighting for maybe a couple of minutes. So providing evidence that Sam Lyon had previously been violent towards people, specifically someone who dated his cousin, that would be supportive evidence to say that Mr. Carson was maybe not the initial aggressor, that this was an actual fight, that there was mutual combat, that Mr. Carson had reason to believe that maybe his life was in danger. There was also evidence these witnesses could have provided evidence that Sam Lyon regularly carried a gun. And just as a brief reminder, Ms. Edwards, one of the main state's witnesses, also testified that she saw Sam Lyon with his hand in his pocket, and that she was unsure at the time whether or not he had an object with him. So there was conflicting evidence that he may have had a gun, he may not have had a gun. Therefore, the fact that the defense didn't provide any evidence or any sort of supportive claim at all to kind of get over the hump, so to speak, was really a failure of trial counsel. And when that evidence was readily available and Mr. Carson knew about that evidence, he could have actually told him that this witness existed, and he didn't talk to him to give him the opportunity to tell him about that witness, I think it's a complete failure of trial counsel and is ineffective. But at this stage, it's just the cleaning stages. The question is whether or not he made a substantial showing. I think based on those allegations and based on Mr. Carson's affidavit, that didn't make a substantial showing of a constitutional violation. He's sufficiently proud enough to indicate that, yes, under these circumstances, trial counsel would be ineffective for talking, again, in a first-degree murder case based on where the two defenses are second-degree murder self-defense, talking to the client for 20 minutes and not even asking him what he believes happened, not even asking him whether he knows anyone who may be a potential witness, not doing the very basic investigative things that we would expect of trial counsel. And, you know, I don't want to keep harking back to Issue 1, but I think these two things are interrelated because I think the fact that the trial court relied on this transcript, which is a document outside the record, allowed it to make these findings of fact which kind of pulled the trial court's decision outside the realm of focusing on what was actually alleged in the post-conviction petition. At this stage, everything Mr. Carson alleges is assumed to be true. By relying on something outside the record, the circuit court kind of tipped the balance in how it looked at this issue and sort of made a finding of fact which complicated the matter. Just as a brief reminder, on Issue 4, if you find that there was a substantial showing of a constitutional violation, you remand this case for a third-stage evidentiary hearing. With that, I want to turn to Issue 2. Counsel in this case failed to file a 651C certificate. The record is absolutely clear on that. There was no 651C certificate filed. Therefore, the state must establish that the record clearly and affirmatively establishes that counsel met the 651C obligations. The record is, in fact, completely muddled and ambiguous as to whether counsel read any of the trial record. There are a couple of references in the state's brief that the counsel mentions at the opening statement. The court actually reads the passages that the state references. The references that post-conviction counsel makes to the trial record are actually very unclear. There are certain periods of time where he actually says, and I can quote this for you, on page 469 of the record, this isn't an issue of a case of self-defense, which would seem to contradict what actually happened in the opening, which was that trial counsel said that this is a case of self-defense. Now, you know, I can't say why post-conviction counsel would say that in the hearing. My point is that the record is ambiguous. It's unclear what post-conviction counsel did. And if you read the record and you're not sure, did he actually read the opening? I mean, he references the motion for new trial. That was attached to the pro se post-conviction position. So he didn't actually have to read the record to learn that information. He could have learned this other information from talking to Carson, could have learned the information from reading the previous trial file. There's no actual indication that he actually read the record. This, again, I'm going to remind the court, is a first-degree murder case, which is about self-defense or second-degree murder. Those are the key issues. He does not reference a single witness during the entire hearing on the post-conviction position. He does not reference Ashley Edwards. He doesn't actually reference a single witness's testimony. When you're talking about lynch material, when you're talking about whether it was ineffective for counsel to do certain actions, he doesn't actually get into the prejudice of it. He doesn't actually talk about what the evidence was, how to balance the evidence, anything like that. So I would say that, based on this record, it is completely unclear as to whether or not counsel read any of the trial record. And, you know, given the presumption just that the necessity to unseek the necessity to not file, the presumption is that counsel did not comply with it. So based on that presumption, I do not think that this record provides a clear enough basis for a finding that post-conviction counsel read the trial record. Could you address the fitness question, please? Address the fitness question with what respect? It's the third issue that you raised. Yes, the long-run issue three, yes. What happened was that, in amending the petition, post-conviction counsel removed all the documentary support that was in the pro se petition. So in filing the post-conviction petition, he included medical records, drug information about drugs he was taking at the time, academic transcripts and other things. For some reason, post-conviction counsel believed that those things would violate his right to privacy. So post-conviction counsel then removed all those documents from the petition and he amended the petition. So, functionally, by doing that, he doomed that entire line of argument. There would be no way to make a substantial showing of a constitutional violation on a fitness claim when, I mean, the bar for a fitness claim is very high, as I'm sure this court knows. So to not provide any documentary support at all, essentially doomed that entire issue right from the get-go. Now, you know, post-conviction counsel, the duty is not, you know, post-conviction counsel doesn't have to get to a third stage hearing every single time, because that would obviously be, you know, that every post-conviction counsel would be unreasonable. What post-conviction counsel has to do is shape the petition in a way and present it to make the arguments legally sufficient to provide the court with at least a sufficient petition. By removing all this documentary support and then on the eve of the hearing withdrawing the issue entirely, he didn't actually present that. And by withdrawing it, he knew at the time that there was evidentiary support. There was support that at the time Carson was taking certain drugs. There was support at the time that he had mental issues. Support at the time about his intelligence. So while all that evidence in itself is not enough to actually show he's unfit, it was perhaps enough to make a substantial showing that he may have been unfit or that his counsel should have known at the time that he was unfit. Again, that's more of a question of material fact that in a third stage evidentiary hearing would have gone into. Or maybe it would have been discussed in a little bit more detail at the hearing. Maybe they would have hashed this out. There would have been a little bit more precise discussion about what the evidence was about fitness. But given that that claim had evidentiary support, it was unreasonable at the time for counsel to just unilaterally destroy more of this. I'll also point out that because he did not file a 51C certificate, again the presumption is that he did not make the necessary amendments. So I would also argue that the fact that making an amendment where you remove all the support from your post-condition petition and then based on a legally incorrect claim, which is that you can't have it because of privacy when it's already been filed in open court, I would say that that indicates that counsel was not acting reasonably. He actually gave unreasonable assistance based on that issue as well. If there are no further questions, though, I would just ask this court to remand for a new second stage post-condition hearing or for a third stage evidentiary hearing. Thank you. Thank you. Ms. Raymond, good afternoon. May it please the court, Your Honor. Counsel. My name is Stephanie Raymond. I represent the people of the state of Illinois in this matter. Regarding Issue 1, I think it's important to back up just a little bit and sort of get the lay of the land. During defendant's motion to suppress the claim, a DVD of his recorded police interview was played in open court and admitted into evidence as People's Exhibit 3. The people later did agree that those statements should be suppressed. However, all parties agreed that those statements could be used for impeachment purposes. Did they agree or just said that because the state said they should be able to use the statement to impeach him if he takes the trial and the defense counsel said that doesn't become an issue unless and if my client testifies, which doesn't mean is that when they're going to argue whether or not they could be admissible for impeachment purposes? The record doesn't establish that the defense counsel was objecting to that being the case and referred later to the DVD should impeachment arise. So it was admitted and then the people agreed that the statement should be suppressed. Later, when the defendant filed his post-conviction petition, he alleged in part that trial counsel was ineffective for advising him not to testify based on the fact that he would be impeached. In response to that, the people filed a motion to dismiss and attached to that the transcript of the already played DVD. Defendant contends that it's the transcript that the trial court relied on in making their decision. However, the record does not reflect that the trial court specifically relied on the transcript. In fact, in her order, she states that she relied on the video that was played before her, which contradicted with the defendant's affidavit and defendant's prior felony conviction. The parties do not reference the transcript, nor does the trial judge, throughout her decision. So defendant's contention that counsel was ineffective for advising him not to testify, it's well settled that advising the client not to testify is trial strategy, and unless the trial counsel prevents or refuses to allow the defendant to testify, it does not constitute ineffective assistance of counsel. Here defendants expressly stated that he did not wish to testify on the record multiple times. The trial judge admonished him that it was his right to testify, and his decision alone. He then again stated that he did not wish to testify. In order for the defendant to prove that counsel's performance was deficient, he would have to prove under Strickland that counsel's performance was deficient and that he was prejudiced as a result. Because trial counsel's advice was sound trial strategy, based on the fact that defendant would have been impeached, it cannot be said that defendant was prejudiced as a result. I'll skip to issue four because it is somewhat interrelated. Defendant again alleges that trial counsel was ineffective for not calling a witness. However, it's trial strategy of which witnesses to call, and for what reasons it is also sound trial strategy to not call witnesses whose testimony would be of questionable value. That is the case here. Kenny Moore's testimony, or his affidavit rather, stated only that he had been threatened by the victim, that if he did not stop seeing his sister he was going to get beat up, and that he once saw the victim in a fight with another individual and that the victim pulled a gun. The remaining portions of the affidavit were just instances that he had heard of. They would, of course, have been hearsay and admissible. Therefore, trial counsel's decision not to call him based on the questionable value of that testimony is trial strategy and one that is sound. So in that instance, trial counsel was not ineffective for not calling a witness, for not calling Kenny Moore as a witness, where the defendant claims that this witness would have potentially exculpatory testimony. However, he mentions it. He never mentions it until after the fact. So if it was that exculpatory, it seems the defendant was engaged throughout the trial. So had it been something that was of such great importance or value, the defendant mentions it nowhere. Regarding Issue 3, well, regarding Issue 3, the things that the defendant attached to his affidavit were things such as a letter from his aunt stating that he had been in special education classes, information on medicines that he took for anxiety and depression, medical records, jail records. None of those things established that he was not fit to stand trial, and the record shows that he was engaged throughout the trial, taking notes. There's nothing in the record that shows that he was engaging in any way in front of the court that would say that he was unfit. The documents didn't prove that. Even if he had limited mental capacity, that doesn't, again, prove that he was not fit. Wasn't there something about him actually taking drugs at the time of the trial, some medication? For anxiety and depression. And schizophrenia? I thought it said schizophrenia too. I'll check. Okay. Before you go on, is the state at the second stage allowed to attach evidence to its motion to dismiss? They're not allowed to introduce new evidence. This was not new evidence. The transcript was not incorrect? Correct, but it's the people's position that the trial judge did not rely on that in making her decision. But that's not the question. It's not whether she relied on it, it's whether it was attached. It was, in fact, attached. That is, the people did attach that to their motion. That's clear. Okay. And it's also clear that it was not part of the record? It was not. Regarding issue two, it's the people's position that there was substantial compliance on their profit. And that substantial compliance would establish compliance with Rule 651C. It's the people's position that there was substantial compliance here, despite not filing a certificate. The counsel communicated with defendant by phone and mail. He amended the petition as required. And he also communicated with defendant in order to ascertain his thoughts of constitutional deprivation. It's the people's position that there was substantial compliance for that issue. Are there no other questions? We would just ask that you affirm. Thank you. Thank you. Mr. Wallenstein, any of you have a follow-up? Yes. Sorry, our counsel left off. Counsel mentioned profit talking about substantial compliance. I think as I pointed out in the reply brief, what that case is talking about is if you file 651C and your wording does not match the rule, like there's a discrepancy in the wording, you still substantially comply. Because, again, a certificate was filed. You affirmed that you did those things. Just because the wording is not exactly a match-up, it's still okay. In this case, the record does not support that counsel read the trial record. If you read these references, it is not clear that counsel learned it from actually reading the record. So there was no compliance in 651C on that matter. And as I'll also discuss, this issue also relates to Issue 3, which is the fact that the counsel's amendments, we cannot presume that they were sufficient. And given that counsel actually removed support from the petition, it's arguable that he complied with 651C. Now I want to turn back to Issue 1 and talk about this DVD. The record does not indicate that the DVD was played in its entire. This motion does not – Is the DVD in the record? It is in the record of this appeal. Okay. I do not know if it was in – The trial record. I do not know how to post an admission petition. I know there's sort of this appeal we have. I will say the record does not reflect that it was played fully. We do not know what was played in this DVD. It was a motion to suppress about his statements before he got into the substance of his actual statement to the police because it was about him invoking certain rights. When you say you're not sure that it was played in its entirety, are you talking about at trial or are you talking about at the hearing? I apologize. At the motion to suppress. We do not know if this DVD was played in its entirety. The motion to suppress focused on whether he invoked certain rights. So the question was, did he say, I want to remain silent? Did he say he didn't want to talk to the police anymore? So that was really the focus of it. There would be no need to play an entire DVD of his entire statement to get into that issue because that statement occurred before he actually went into the body of his statement. The court recorder does not record what was played on the DVD. This is the statement. That reminds me of another question. This transcript is not certified by anybody. Correct. Do we even know who typed it up? I don't. And I'll also say having listened to the DVD, there are certain points where it is not exactly clear that the transcript is accurate. You can tell that because there's parentheticals saying sounds like. Yes. But this is not a certified transcript. No, it's not. And to be honest, we don't know exactly where it came from. I'll also point out that, you know, if the DVD was sufficient, why did the state attach a transcript of the statement to the motion of dismissal? Why did it attach this document that was never a trial if the record itself apparently rebutted his claims? I would say that it didn't. They needed this transcript to have the judge read the transcript and, you know, maybe I don't know how accurate this transcript is. Maybe the judge saw something in that transcript that would not be reflected if they had actually seen the DVD. Seeing someone speak is very different than reading a transcript. It's just different things. And just turning quickly to Issue 4, you know, there's this question of, well, firstly, there was a very brief mention of this prior felony. There was no Montgomery hearing about this prior felony. There was nothing indicating that the state was ever going to impeach him on a prior felony. Prior felony is also an out-of-state conviction that I attempted to look up further. It seems to be a Class D in Texas, which I'm not even sure that would qualify as impeaching in Illinois. So I'm not sure he would have been impeached on that. He said he didn't want to testify. That's true, but, again, he said that based on his attorney telling him, you will be impeached if you testify. I think it's reasonable to assume a client will follow that attorney's advice. Unfortunately, that attorney's advice is not based on anything. The attorney did not take the time to investigate the case. He did not talk to his client to learn what are you going to testify to. He told him you're going to be impeached based on, you know, I guess just his assumption that my client's going to be impeached. You know, he didn't actually learn about possible witnesses. In the affidavit attached to the post-state petition, Carson says that he attempted to reach out to him through family members and was not able to get in contact with him. This is an attorney who's not doing the basic responsibility that we expect of an attorney. Just on issue three briefly, the question is what the post-conviction counsel did. Whether post-conviction counsel provided unreasonable assistance. Post-conviction counsel does not have to win every post-conviction petition. Post-conviction counsel has to shape the claims, has to provide support as best they can. Why remove support from the post-conviction petition? Why? I cannot think of a reason why. And post-conviction counsel's stated reasons don't make sense. He says it's because of privacy. He says we can present it at the third stage. Why? Why not plead sufficiently at the stage that you're at? That's really what this question begs. At this stage, we're not trying to prove him. This evidence provides some support that maybe he was not fit at the time. That's the kind of issue that you need an evidentiary hearing to go into. Discussion of what he was like at the time. His counsel could talk about what was my interactions like with him at the time. It's not necessarily, at this stage, we're not trying to solve the problem. We're trying to, post-conviction counsel had a duty to provide sufficient support to the petition, to shape the claims, to, you know, talk to Carson, figure out how do I look at the record. Again, we don't know if he even looked at the record, so we can't even be sure about that. I think based on that, this issue would demand a second stage remand act for a new second stage post-conviction. So if there are no further questions, again, I'd ask this court to reverse the circuit court's dismissal and remand either for a new second stage post-conviction procedure or for a third stage. Thank you. I have one question. Based on the record, and I'm just too lazy to look at it myself, was the judge the same on the motion to suppress? Was it the same judge that conducted the second stage post-conviction hearing? Because I'm guessing there was a significant expanse of time. I, to be honest, I don't remember off the top of my head. If you want, I can get that information. Something I should do. Okay. I apologize for not knowing that, but yes, I'm not sure. Any other questions? Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision.